## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| ALPHA MODUS, CORP., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 2:25-cv-1060 |
| | ) | |
| v. | ) | |
| | ) | **JURY TRIAL DEMAND** |
| 7-ELEVEN, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Alpha Modus, Corp. ("Alpha Modus" or "Plaintiff") files this Complaint for Patent Infringement and Demand for Jury Trial against 7-Eleven, Inc. ("7-Eleven" or "Defendant") for infringement of United States Patent Nos. 10,360,571 ("the '571 Patent"), 11,042,890 (the "'890 Patent"), and 11,301,880 ("the '880 Patent"), 11,049,120 (the "'120 Patent"), 12,026,731 (the "'731 Patent"), 12,039,550 (the "'550 Patent"), 12,354,121 (the "'121 Patent"), and 12,423,718 (the "'718 Patent") (collectively the "Patents-in-Suit").

## THE PARTIES

1.      Alpha Modus is a corporation organized and existing under the laws of Florida and located at 20311 Chartwell Center Dr., Suite 1469, Cornelius, North Carolina 28031.

2.      Upon information and belief, Defendant 7-Eleven, Inc. is a corporation organized and existing under the laws of Texas and may be served with process through its registered agent, Corporate Creations Network Inc., 5444 Westheimer #1000, Houston, Texas 77056.

## JURISDICTION AND VENUE

3.      This is an action for patent infringement arising under the patent laws of the United States, Title 35, United States Code, including 35 U.S.C. §§ 154, 271, 281, and 283-285.

4.      This Court has exclusive subject matter jurisdiction over this case for patent infringement under 28 U.S.C. §§ 1331 and 1338.

5.      This Court has personal jurisdiction over 7-Eleven, Inc. at least because 7-Eleven maintains places of business in this District at 15185 Preston Rd, Frisco, Texas 75035 and at 15605 FM 968 W., Longview, Texas 75602, and engages in continuous and systematic business activities within this District, including conduct giving rise to this action.

6.      7-Eleven has conducted and does conduct business within the State of Texas.

7.      7-Eleven has committed, and continues to commit, acts of infringement in this District, has conducted business in this District, and/or has engaged in continuous and systematic activities in this District.

8.      This Court has personal jurisdiction over 7-Eleven at least because 7-Eleven has made, used, offered to sell, sold, or put into service the accused products, systems, or services within the State of Texas and, on information and belief, within this District, thus committing acts of infringement within the District, and has placed infringing products, systems, or services into the stream of commerce knowing or understanding that such products, systems, or services would be used in the United States, including in the Eastern District of Texas. 7-Eleven, thus, has committed and continues to commit acts of infringement in this District by, among other things, offering to sell, selling products and/or services, and/or using services that infringe the Asserted Patents.

9.      This Court likewise has personal jurisdiction over 7-Eleven at least because, on information and belief, 7-Eleven has committed acts within this District giving rise to this action and has established minimum contacts with this forum such that the exercise of jurisdiction over 7-Eleven would not offend traditional notions of fair play and substantial justice.

10.      This Court has specific personal jurisdiction over 7-Eleven in this action pursuant to due process and the Texas Long Arm Statute because the claims asserted herein arise out of or are related to 7-Eleven voluntary contacts with this forum, such voluntary contacts including but not limited to: (i) at least a portion of the actions complained of herein; (ii) purposefully and voluntarily placing one or more Accused Products into this District and into the stream of commerce with the intention and expectation that they will be purchased and used by customers in this District; or (iii) regularly doing or soliciting business, engaging in other persistent courses of conduct, or deriving substantial revenue from goods and services, including the Accused Products.

11.      Venue is proper in this Court pursuant to 28 U.S.C. § 1400(b).

12.      7-Eleven is registered to do business in Texas, has transacted business in this District, and has committed acts of direct and indirect infringement in this District

13.      7-Eleven has regular and established places of business in this District.

14.      7-Eleven operates multiple stores in this District, including at 15185 Preston Rd, Frisco, Texas 75035 and at 15605 FM 968 W., Longview, Texas 75602.  These locations are a regular and established place of business of 7-Eleven.

## ALPHA MODUS'S INNOVATION IN RETAIL TECHNOLOGY

15.      Alpha Modus Corp. specializes in the development of innovative retail technologies.

3

16.     At the core of Alpha Modus's technology portfolio, including the Asserted Patents, is the capability to analyze consumer behavior and product interaction in real-time. This advanced capability allows businesses to dynamically adjust their marketing strategies to meet the immediate needs of consumers at pivotal purchasing decision moments.

17.     Alpha Modus, in an effort to ensure transparency and accessibility, maintains a comprehensive presentation of its patent portfolio on its official company website, available at https://alphamodus.com/what-we-do/patent-portfolio/. The patent portfolio provided on Alpha Modus's website lists the Asserted Patents.

18.     Alpha Modus has entered into several intellectual property licensing agreements outside of litigation. These agreements are indicative of Alpha Modus's commitment to legally disseminating its patented technology.

## THE '571 PATENT

19.     Alpha Modus is the owner by assignment from the inventors, Michael Garel and Jim Wang, of all right, title, and interest in and to United States Patent No. 10,360,571 ("the '571 Patent") titled "Method For Monitoring And Analyzing Behavior And Uses Thereof," including the right to sue for all past, present, and future infringement. A true and correct copy of the '571 Patent is attached to this Complaint at Exhibit A.

20.     The '571 Patent issued from U.S. Patent Application Serial No. 14/335,429.

21.     The '571 Patent claims the benefit of U.S. Patent Application Serial No. 61/856,525, filed on July 19, 2013.

22.     The Patent Office issued the '571 Patent on July 23, 2019, after a full and fair examination.

23.     The '571 Patent is valid and enforceable.

24.     The '571 Patent relates to a method for monitoring and analyzing consumer behavior in real-time, particularly within retail environments. It utilizes various information monitoring devices to collect data about consumers, enhancing their shopping experience through targeted and personalized digital interactions.

25.     The inventors of the '571 Patent identified a critical need in the retail industry, especially brick-and-mortar stores, to adapt to the evolving shopping habits influenced by online retail and social media. The patent addresses the challenge of providing an enriched in-store experience that rivals online shopping, thus countering trends like showrooming.

26.     The '571 Patent provides several advantages over the prior art such as providing a method for real-time analysis and utilization of collected shopper data, including demographic, sentiment, and tracking information, to deliver personalized marketing, engagement, and promotional material directly influencing the consumer's purchasing decision.



*FIG. 1*

*FIG. 2*

27.    The '571 Patent describes and claims a specific method that involves using information monitoring devices, like video image devices, to gather data about shoppers. This data includes demographic characteristics (such as gender and age), sentiment, and tracking details (like movement and eye tracking). The patent details the process of analyzing this data in real-time and providing various responses, such as targeted marketing, personal engagement, or offering coupons, to enhance the shopping experience.

28.    Claim 1 of the '571 Patent reads:

1. A method comprising:
(a) using one or more information monitoring devices to gather information about persons in a group of persons at a location, wherein
    (i) the persons are each in proximity of at least one of the one or more information monitoring devices at the location, wherein
    (ii) the one or more information monitoring devices are operably connected to (A) a server, (B) one or more databases, or (C) both,
    (iii) the one or more information monitoring devices comprise one or more video image devices;
    (iv) the step of gathering information using the one or more information monitoring devices comprises gathering a demographic characteristic of the persons in the group of persons using the one or more video image devices, wherein the demographic characteristic is selected from a group consisting of gender of the persons, approximate age of the persons, and combinations thereof,
    (v) the step of gathering information using the one or more information monitoring devices comprises gathering a sentiment characteristic of the persons in the group of persons using the one or more video image devices,

(vi) the step of gathering information using the one or more information monitoring devices comprises gathering a tracking characteristic of the persons in the group of persons, wherein the tracking characteristic of the persons is selected from a group consisting of movement of the persons relative to the one more information monitoring devices, eye movement of the persons tracked by the one or more video image devices, and combinations thereof,

(b) providing an opt-out option to the persons in the group of persons, wherein after receipt of an affirmation of the opt-out option from an opt-out person, the opt-out person is in the subset of the opt-out persons,

(c) analyzing in real time using (A) the server, (B) the one or more databases, or (C) both the information gathered by the information monitoring devices of the persons in the group of persons, except for the subset of opt-out persons who have affirmatively opted-out, wherein the analyzed information comprises the demographic characteristic of the persons, the sentiment characteristic of the persons, and the tracking information of the persons; and

(d) providing a response in real time based upon the analyzed information gathered by the information monitoring devices, wherein the response is selected from a group consisting of

(i) engaging the person based upon the analyzed information of the person, wherein the engaging is performed using one or more displays and content being displayed on the one or more displays is selected based upon the analyzed information,

(ii) sending a communication to a second person at the location who can then in real time directly interact with the person regarding at least a portion of the analyzed information,

(iii) providing marketing or advertising information to the person in real time based upon the analyzed information, wherein the marketing or advertising information is either provided to the person by a display at the location or by sending the marketing or advertising information to the mobile device of the person, and

(iv) providing a coupon to the person in real time based upon the analyzed information, wherein the coupon is either a printed out coupon or is a digital coupon.

## THE '890 PATENT

29.     Alpha Modus is the owner by assignment from the inventors, Michael Garel and Jim Wang, of all right, title, and interest in and to United States Patent No. 11,042,890 (the "'890 Patent") titled "Method And System For Customer Assistance In A Retail Store," including the right to sue for all past, present, and future infringement. A true and correct copy of the '890 Patent is attached to this Complaint at Exhibit B.

30.    The '890 Patent issued from U.S. Patent Application No. 16/837,711, filed on April 1, 2020.

31.    The '890 Patent is a continuation of application No. 16/509,343, filed on Jul. 11, 2019, which in turn is a continuation of application No. 14/335,429, filed on Jul. 18, 2014.

32.    The Patent Office issued the '890 Patent on June 22, 2021, after a full and fair examination.

33.    The '890 Patent is valid and enforceable.

34.    The '890 Patent relates to an improved method for enhancing customer assistance in retail stores through the use of advanced information monitoring systems.

35.    The inventors of the '890 Patent recognized the need for brick-and-mortar retailers to adapt to the changing consumer behavior influenced by digital technology. The patent offers a solution by integrating technology to analyze customer interactions with products in real-time, providing targeted assistance and enhancing the shopping experience.

36.    The '890 Patent provides several advancements over previous methods, such as real-time analysis of customer interactions with products, including sentiment and object identification information, and utilizing this data to manage inventory and offer personalized responses.

37.    The '890 Patent describes and claims a specific method involving the use of information monitoring devices to gather and analyze data about a customer's interaction with products in a retail store. This method includes steps for gathering object identification and sentiment information about the product, analyzing this information in real-time, and providing appropriate responses to enhance the customer's shopping experience.

38.    Claim 1 of the '890 Patent reads:

1. A method comprising:

(a) using one or more information monitoring devices to gather information about a person at a retail store, wherein

(i) the person is in proximity to at least one of the one or more information monitoring devices at the retail store,

(ii) the one or more information monitoring devices are operably connected to (A) a server, (B) one or more databases, or (C) both, and

(iii) the step of gathering information using the one or more information monitoring devices comprises

(A) gathering object identification information of a product that the person is interested in purchasing, and

(B) gathering sentiment information of the person with respect to the product;

(b) analyzing the information in real time using (A) the server, (B) the one or more databases, or (C) both gathered by the information monitoring devices about the shopping activities of the plurality of persons to manage inventory of the products in the retail store at the one or more product points, wherein the analyzed information comprises the object identification information and the sentiment information; and

(c) providing a response in real time based upon the analyzed information gathered by the information monitoring devices, wherein the response is selected from a group consisting of

(i) sending a communication to the person directing the person to a location in the retail store at which the person can interact with the product,

(ii) engaging the person based upon the product, wherein the engaging is performed using one more displays and content being displayed on the one or more displays is selected based upon the product,

(iii) sending a communication to a second person in the retail store who can then in real time interact with the person regarding the product,

(iv) providing marketing or advertising information to the person in real time based upon the product, wherein the marketing or advertising information is either product to the person by a display at the retail store or by sending the marketing or advertising information to a mobile device of the person, and

(v) providing a coupon to the person in real time based upon the product, wherein the coupon is either a printed out coupon or a digital coupon.

## THE '120 PATENT

39.    Alpha Modus is the owner by assignment from the inventors, Michael Garel and Jim Wang, of all right, title, and interest in and to United States Patent No. 11,049,120 (the "'120 Patent") titled "Method And System For Generating A Layout For Placement Of Products In A

Retail Store," including the right to sue for all past, present, and future infringement. A true and correct copy of the '120 Patent is attached to this Complaint at Exhibit C.

40.     The '120 Patent issued from U.S. Patent Application No. 16/837,577 filed on April 1, 2020, which in turn is a continuation of application No. 14/335,429, filed on Jul. 18, 2014.

41.     The Patent Office issued the '120 Patent on June 29, 2021, after a full and fair examination.

42.     The '120 Patent is valid and enforceable.

43.     The '120 Patent introduces a novel system for tracking customer movement and for optimizing the layout of products provided within a retail store setting.

44.     The '120 Patent addresses the emerging challenges in the retail sector, particularly for brick-and-mortar stores, in the context of monitoring and analyzing consumer behavior in the retail store in order to better optimize the layout of product available within the store using that information and analysis thereof. The patent provides innovative solutions to enhance in-store customer experiences and counter the competitive pressures from online retail.

45.     The inventors of the '120 Patent recognized the need for brick-and-mortar retailers to adapt to the changing consumer behavior in order to better optimize the layout of products within the retail store using behavior information from consumers. The patent offers a solution by integrating technology to analyze customer interactions with products in real-time, providing updated store layout suggestions by analyzing that information in order to enhance realized purchases and revenues from shoppers.

46.     The '120 Patent provides several advancements over previous methods, such as real-time analysis of customer traffic within the store as well as customers' interactions with products, and utilizing this data to improve the layout of products available in the store.

47.     The '120 Patent describes and claims a specific system incorporating servers, video imaging devices such as cameras, and information monitoring devices to monitor customer movement and generate improved store layouts utilizing data analysis.

48.     Claim 1 of the '120 Patent reads:

1. A method comprising:
(a) using one or more information monitoring devices to gather information about shopping activities of a plurality of persons at a retail store, wherein
    (i) the retail store has a first layout of products within and about the retail store,
    (ii) persons in the plurality of persons are in proximity to at least one of the one or more information monitoring devices at the retail store,
    (iii) the one or more information monitoring devices are operably connected to (A) a server, (B) one or more databases, or (C) both,
    (iv) the one or more information monitoring devices comprise one or more video image devices,
    (v) the step of gathering information using the one or more information monitoring devices comprises
        (A) gathering traffic information of the persons within and about the retail store, wherein the traffic information comprises (I) tracking movement of the persons relative to the one or more information monitoring devices, (II) identification of one or more stops that the persons make within and about the retail store, and (III) tracking position and duration of stop of the persons for each of the one or more stops,
        (B) gathering product interaction information based upon type of interactions the persons had with one or more products in the retail store, wherein the type of product interactions are selected from a group consisting of (I) the one or more products are viewed by the persons at each of the one or more stops, (II) the one or more products are picked up by the persons at each of the one or more stops, (III) the one or more products are carried away by the persons at each of the stops, and (IV) combinations thereof, and
        (C) gathering object identification information of the one or more products that the persons interacted with during the product interactions;
(b) analyzing the information gathered by the information monitoring devices about the shopping activities of the plurality of persons to generate a layout analysis, wherein the analyzed information comprises the tracking information, the product interaction information, and the object identification information; and

   (c) utilizing the layout analysis to modify the first layout to generate a second layout of the products within and about the retail store.

## THE '880 PATENT

49.    Alpha Modus is the owner by assignment from the inventors, Michael Garel and Jim Wang, of all right, title, and interest in and to United States Patent No. 11,301,880 (the "'880 Patent") titled "Method And System For Inventory Management In A Retail Store," including the right to sue for all past, present, and future infringement. A true and correct copy of the '880 Patent is attached to this Complaint at Exhibit D

50.    The '880 Patent issued from U.S. Patent Application No. 16/837,645 filed on April 1, 2020.

51.    The '880 Patent is a continuation of application No. 16/509,343, filed on Jul. 11, 2019, which in turn is a continuation of application No. 14/335,429, filed on Jul. 18, 2014.

52.    The Patent Office issued the '880 Patent on April 12, 2022, after a full and fair examination.

53.    The '880 Patent is valid and enforceable.

54.    The '880 Patent introduces a novel method and system for real-time inventory management within a retail store setting, designed to improve operational efficiency and customer experience.

55.    The '880 Patent addresses the emerging challenges faced by brick-and-mortar retail stores due to the increasing prevalence of online shopping and showrooming. It provides innovative solutions to enhance in-store customer experiences and counter the competitive pressures from online retail by leveraging real-time data analysis and inventory management strategies.

56.     The inventors of the '880 Patent recognized that there existed a significant gap in the brick-and-mortar retail sector's ability to provide real-time, personalized experiences to customers, a feature commonly leveraged by online retailers. The patent offers a method and system that bridges this gap by utilizing technology to analyze consumer behavior and dynamically adjust marketing and inventory strategies.

57.     The '880 Patent provides several advantages over the prior art, such as real-time tracking of product interactions and the ability to send immediate responses for inventory adjustments. This method aims to minimize stockouts, enhance customer satisfaction, and boost sales by ensuring the availability of popular products.

58.     The '880 Patent describes and claims a specific system incorporating servers, image recognition, and information monitoring devices to manage inventory, track product interactions, and generate real-time responses for inventory management based on data analysis.

59.     Claim 1 of the '880 Patent reads:

1. A method comprising:
(a) using one or more information monitoring devices to gather information about shopping activities of a plurality of persons at a retail store, wherein
> (i) the retail store comprises a plurality of products that are stocked within the retail store, wherein the plurality of products are stocked upon one or more product points selected from a group consisting of shelves, end caps, displays, and combinations thereof,
> (ii) persons in the plurality of persons are in proximity to at least one of the one or more information monitoring devices at the retail store,
> (iii) the one or more information monitoring devices are operably connected to (A) a server, (B) one or more databases, or (C) both;
> (iv) the one or more information monitoring devices comprise one or more video image devices,
> (vi) the step of gathering information using the one or more information monitoring devices comprises
>> (A) gathering product interaction information based upon product interactions the persons have with one or more products in the retail store, wherein the product interactions information comprises
>>> (I) the one or more products are picked up by the persons at the

retail store, and (II) the one or more products are carried away by the persons at each of the retail store, and

(B) gathering object identification information of the one or more products that the persons interacted with during the product interactions;

(b) analyzing the information in real time using (A) the server, (B) the one or more databases, or (C) both gathered by the information monitoring devices about the shopping activities of the plurality of persons to manage inventory of the products in the retail store at the one or more product points, wherein the analyzed information comprises the product interaction information and the object identification information; and

(c) providing a response in real time based upon the analyzed information gathered by the information monitoring devices, wherein the response is selected from a group consisting of

(i) sending a communication to a retail person to check inventory levels for a first product of the one or more products at the product point for the first product,

(ii) sending a communication to the retail store person to immediately re-stock the one or more first products at the product point for the first product,

(iii) sending a communication to the retail store person to contact a distribution center to obtain the one or more first products for delivery to the retail store for restocking the one or more first products at the product point for the first product, and

(iv) sending a communication to add one or more first products to an inventory order for inventory for the retail store.

### THE '731 PATENT

60.    Alpha Modus is the owner by assignment from the inventors, Michael Garel and Jim Wang, of all right, title, and interest in and to United States Patent No. 12,026,731 (the "'731 Patent") titled "Method For Personalized Marketing And Advertising Of Retail Products," including the right to sue for all past, present, and future infringement. A true and correct copy of the '731 Patent is attached to this Complaint at Exhibit E.

61.    The '731 Patent issued from U.S. Patent Application No. 18/100,377 filed on January 23, 2023.

62.    The '731 Patent is a continuation of application No. 17/590,605, filed on Feb. 1, 2022.

63.     The Patent Office issued the '731 Patent on July 2, 2024, after a full and fair examination.

64.     The '731 Patent is valid and enforceable.

65.     The '731 Patent introduces a novel method for obtaining an information analysis of a shopper's activities, for tracking the shopper using information monitoring devices to determine location, and for providing targeted communications to that shopper based on their shopping history and real-time location.

66.     The '731 Patent addresses the emerging challenges in the retail sector, particularly for brick-and-mortar stores, in the context of delivering personalized marketing and advertising tied to in-store behavior and purchase activity. The patent provides innovative solutions for enhancing consumer engagement and driving sales by delivering targeted coupons, promotions, and product information directly to shoppers.

67.     The inventors of the '731 Patent recognized the need for retailers to adapt to changing consumer behavior by using in-store monitoring technologies to gather information about a shopper's interactions with products, track their location, and then provide communications that direct the shopper to a retail store location and deliver personalized advertising or purchase options.

68.     The '731 Patent provides several advancements over previous methods, such as real-time analysis of consumer product interactions, real-time shopper location tracking, and using this information to provide communications including marketing advertisements, digital coupons, store-specific promotions, and purchase options such as pickup, delivery, or reduced price offers.

69.     The '731 Patent describes and claims a specific system incorporating servers, databases, and information monitoring devices including video image devices to monitor shopping

activity, track consumer location, generate a real-time analysis of shopper behavior, and provide personalized product communications and store location information via interactive devices.

70.    Claim 1 of the '731 Patent reads:

1. A method for personalized marketing or advertising of one or more products for purchase by a plurality of persons from retail stores, wherein, for each person in the plurality of persons, the method comprising:
(a) obtaining an information analysis about the shopping activities of the person, wherein,
    (i) the information analysis is an analysis of gathered information by one or more first information monitoring devices about shopping activities of the person,
    (ii) the gathered information comprises gathered product interaction information of the person, wherein
        (A) the gathered product interaction information comprises product interaction information gathered by at least one of the one or more first information monitoring devices, and
        (B) the product interaction information is based upon shopping by the person of one or more first products,
(b) tracking the person using one or more second information monitoring devices to determine the location of the person;
(c) based upon the determined location of the person, providing the person, via a first interactive device, a communication, wherein the communication comprises
    (i) a location communication comprising a retail store location at which the person can purchase a product, wherein the product relates to at least one of the one or more first products, and
    (ii) a product communication that is directed to the person based upon the information analysis and that is selected from the group consisting of
        (A) a product communication of marketing or advertising information regarding the product,
        (B) a product communication of a coupon regarding the product, wherein the coupon is received by the person either as a printed out coupon or as a digital coupon,
        (C) a product communication of a coupon regarding one or more products that relate to the product, wherein the coupon is received by the person either as a printed out coupon or as a digital coupon,
        (D) a product communication regarding a purchase option for the product, wherein the purchase option comprises an option to ship the product to the person or an option for the person to pick-up the product, and
        (E) a product communication regarding a purchase option for the product, wherein the purchase option comprises an option to purchase the product at a reduced price during a limited period of time.

## THE '550 PATENT

71.    Alpha Modus is the owner by assignment from the inventors, Michael Garel and Jim Wang, of all right, title, and interest in and to United States Patent No. 12,039,550 (the "'550 Patent") titled "Method for Enhancing Customer Shopping Experience in a Retail Store," including the right to sue for all past, present, and future infringement. A true and correct copy of the '550 Patent is attached to this Complaint at Exhibit F.

72.    The '550 Patent issued from U.S. Patent Application No. 17/590,605, filed on February 1, 2022.

73.    The '550 Patent is a continuation of prior applications tracing back through the family, including U.S. Patent No. 10,853,825 (filed July 11, 2019), and U.S. Patent No. 10,360,571 (filed July 18, 2014), ultimately claiming priority to a provisional application filed July 19, 2013.

74.    The U.S. Patent and Trademark Office issued the '550 Patent on July 16, 2024, after a full and fair examination.

75.    The '550 Patent is valid and enforceable.

76.    The '550 Patent introduces an innovative system for enhancing customer shopping experience in a retail store by monitoring and analyzing consumer behavior in real-time—leveraging technologies such as MAC-address tracking, object identification of goods, open APIs, and an advertising broker rules engine—to drive sales via engaging, real-time digital customer experiences.

77.    The '550 Patent addresses pressing challenges faced by brick-and-mortar retail in the face of showrooming and the dominance of online retail. It offers novel solutions to provide richer, data-driven, in-store experiences that strengthen customer engagement and counter competitive pressures, by providing real-time analytics and outreach strategies.

78.     The inventors recognized a vital deficiency in conventional brick-and-mortar stores: the lack of real-time insight into in-store shopper behavior that online retailers routinely exploit. The '550 Patent bridges this gap by providing a technological framework that enables retailers to capture behavioral data and dynamically adjust marketing, merchandising, and customer support accordingly.

79.     The '550 Patent offers several advantages over the prior art, including real-time behavior monitoring capabilities and the ability to deliver real-time engagement via interactive displays or sales assistance informed by tracking data—thereby enhancing the relevance of consumer interactions and potentially increasing in-store conversion rates.

80.     The '550 Patent describes and claims a specific system architecture that includes information monitoring devices to gather and analyze real-time behavioral and demographic data, which then drives interactive outputs like demographic-responsive displays and purchase facilitation.

81.     Claim 1 of the '550 Patent reads:

1. A method comprising:
(a) obtaining an information analysis about the shopping activities of a plurality of
    persons, wherein,
        (i) the information analysis is an analysis of gathered information by one
            or more information monitoring devices about shopping activities of a
            plurality of persons,
        (ii) the gathered information comprises gathered traffic information of the
            plurality of persons, wherein the gathered traffic information
            comprises traffic information gathered by at least one of the one or
            more information monitoring devices, and
        (iii) the gathered information further comprises gathered product
            interaction information of the plurality of persons, wherein
                (A) the gathered product interaction information comprises product
                    interaction information gathered by at least one of the one or
                    more information monitoring devices, and
                (B) the product interaction information is based upon type of
                    interactions the persons had with one or more products, and

(iv) the gathered information further comprises gathered object identification information, wherein

    (A) the gathered object identification information comprises object identification information gathered by at least one of the one or more information monitoring devices, and

    (B) the object identification information comprises the one or more products that the persons interacted with during the product interactions;

(b) providing the information analysis to a brand entity for enhancing in-store shopping experience of customers of one or more brick-and-mortar retail stores, wherein

    (i) the brand entity is an entity that provides one or more brand products to one or more brick-and-mortar retails store; and,

(c) enhancing the in-store shopping experience of the customers of the one or more brick-and-mortar retail stores by an experience from the brand entity selected from the group consisting of

    (i) engagement of the customer based upon the information analysis, wherein the engagement is received by the customer using one or more displays and content of the engagement being displayed on the one or more displays is selected based upon the information analysis and based upon the one or more brand products,

    (ii) engagement of the customer based upon the information analysis, wherein the engagement is received by the customer by a second person at the brink-and-mortar retail store who can directly interact with the customer based upon (A) the information analysis received by the second person by an electronic communication sent to the second person by a system at the brink-and-mortar retail store and (B) based upon the one or more brand products,

    (iii) provision of marketing or advertising information directed to the customer based upon the analyzed information and based upon the one or more brand products, wherein the marketing or advertising information is received by the customer through a display at the one or more brick-and-mortar retail stores or by receiving the marketing or advertising information on a mobile device of the customer, and

    (iv) provision of a coupon directed to the customer based upon the analyzed information, wherein the coupon is received by the customer either as a printed out coupon or as a digital coupon.

## THE '121 PATENT

82.    Alpha Modus is the owner by assignment from the inventors, Michael Garel and Jim Wang, of all right, title, and interest in and to United States Patent No. 12,354,121 (the "'121

Patent") titled "Method And System For Shopping In A Retail Store," including the right to sue for all past, present, and future infringement. A true and correct copy of the '121 Patent is attached to this Complaint at Exhibit G.

83.     The '121 Patent issued from U.S. Patent Application No. 18/651,410 filed on April 30, 2024, which in turn is a continuation of application No. 14/335,429, filed on Jul. 18, 2014.

84.     The Patent Office issued the '121 Patent on July 8, 2025, after a full and fair examination.

85.     The '121 Patent is valid and enforceable.

86.     The '121 Patent introduces a novel system for tracking customer movement, for tracking products retained while shopping, for tracking to a point-of-sale area, and for interfacing with this information in the point-of-sale area for payment of the products.

87.     The '121 Patent addresses the emerging challenges in the retail sector, particularly for brick-and-mortar stores, in the context of monitoring products retained for purchase and for allowing purchase of the products by the shopper within the point-of-sale area. The patent provides innovative solutions to enhance in-store customer experiences and to increase the speed and efficacy of the shopper's purchase transaction.

88.     The inventors of the '121 Patent recognized the need for brick-and-mortar retailers to adapt to the changing consumer behavior in order to better optimize the shopper's purchase experience in a retail store by recording the users location during shopping, the items retained by the customer for purchase, and then providing a seamless purchase experience for the shopper at the point-of-sale area of the retail store.

89.     The '121 Patent provides several advancements over previous methods, such as real-time analysis of customer traffic within the store as well as customers' interactions with

products, and utilizing this data to improve the speed and ease of the customer's purchase experience.



FIG. 1



FIG. 2

90.    The '121 Patent describes and claims a specific system incorporating servers, video imaging devices such as cameras, and information monitoring devices to monitor customer movement and items selected for purchase, maintain a list of items selected for purchase, and providing for purchase of such items in the point-of-sale area of the retail store.

91.    Claim 1 of the '121 Patent reads:

1. A method comprising using a system comprising a server, one or more information monitoring devices, and one or more databases, wherein the method comprises:

(a) using at least one of the one or more information monitoring devices to identify a first person at a retail store, wherein

    (i) the first person is in proximity of at least one of the one or more information monitoring devices at the retail store,

    (ii) the one or more first information monitoring devices are selected from a group consisting of computing devices, user input and output devices, displays, POS devices, cameras, sensors; WIFI devices; in-store customer devices; output devices; system for communicating to user devices, and kiosks, and

    (iii) the one or more information monitoring devices are operably connected to (A) the server, (B) the one or more databases, or (C) both;

(b) using at least one of the one or more of the information monitoring devices to gather shopping information of the first person at the retail store, wherein

    (i) the gathered shopping information comprises gathered traffic information of the first person, wherein

        (A) the gathered traffic information comprises traffic information of the first person gathered by at least one of the one or more information monitoring devices, and

        (B) the traffic information comprises identification of one or more stops that the first person makes within and about the retail store,

    (ii) the gathered shopping information further comprises gathered product interaction information of the first person at the retail store, wherein

        (A) the gathered product interaction information comprises product interaction information of the first person gathered by at least one of the one or more information monitoring devices, and

        (B) the product interaction information is based upon type of product interactions the first person had with one or more products at the retail store, wherein the type of product interactions are selected from a group consisting of (I) the one or more products viewed by the first person at the retail store at each of the one or more stops, (II) the one or more products picked up by the first person at the retail store at each of the one or more stops, (III) the one or more products put down by the first person at the retail store at each of the one or more stops, ((IV) the one or more products carried away by the first person at the retail at each of the one or more stops, and (V) combinations thereof, and

    (iii) the gathered shopping information further comprises gathered object identification information, wherein

        (A) the gathered object identification information comprises object identification information gathered by at least one of the one or more information monitoring devices, and

(B) the object identification information comprises the one or more products that the first person interacted with during the product interactions; and

(c) analyzing by the system, in real time, the gathered shopping information to generate and maintain a list of the one or more products that the first person interacted with during the product interactions, wherein the list comprises a listing of the products retained by the first person while shopping at the retail store;

(d) using the one or more of the information monitoring devices to track the first person to a point-of-sale area of the retail store;

(e) in response to the first person being tracked to the point-of sale area, interfacing the system, in real time, with a payment system for payment by the first person of the list of the products retained by the first person while shopping at the retail store at the point-of-sale area; and

(f) transmitting a receipt to the first person after payment by the first person, wherein the receipt comprises the list of the products purchased at the retail store.

## THE '718 PATENT

92.      Alpha Modus is the owner by assignment from the inventors, Michael Garel and Jim Wang, of all right, title, and interest in and to United States Patent No. 12,423,718 (the "'718 Patent") titled "Methods and Systems for Providing Customer Assistance in a Retail Store," including the right to sue for all past, present, and future infringement. A true and correct copy of the '718 Patent is attached to this Complaint at Exhibit H.

93.      The '718 Patent issued from U.S. Patent Application No. 18/905,975, filed on October 3, 2024.

94.      The '718 Patent is a continuation of prior applications tracing back through the family, including U.S. Patent No. 10,853,825 (filed July 11, 2019), and U.S. Patent No. 10,360,571 (filed July 18, 2014), ultimately claiming priority to a provisional application filed July 19, 2013.

95.      The U.S. Patent and Trademark Office issued the '718 Patent on September 23, 2025, after a full and fair examination.

96.      The '718 Patent is valid and enforceable.

97.     The '718 Patent introduces an innovative system for enhancing customer shopping experience in a retail store by monitoring and tracking the shopper using items retained by the shopper for purchase, comparing the list of retained items with a list of items being purchased, and sending communications to sales associates based on such information or analysis.

98.     The '718 Patent addresses pressing challenges in making the checkout process faster for the consumer and more accurate for the retailer. It offers novel solutions to provide faster and more accurate checkouts, while also potentially requiring lower employee labor costs by the retailer.

99.     The inventors recognized a vital deficiency in conventional brick-and-mortar stores: potential discrepancies in items being purchased by the consumer compared to the items retained by the consumer while shopping. The '718 Patent bridges this gap by comparing an expected list of items retained for purchase by a consumer during shopping with another list of items being purchased by the consumer, allowing the retailer to recognize discrepancies, improve efficiency and better avoid product loss.

100.     The '718 Patent describes and claims a specific system architecture that includes information monitoring devices to gather and analyze real-time behavioral and product data to facilitate checkout speed and purchase accuracy..

101.     Claim 1 of the '718 Patent reads:

1. A method comprising:
   (a) using one or more information monitoring devices to gather information about a first person in a group of persons at a retail store, wherein
   (i) the first person is in proximity of at least one of the one or more information monitoring devices at the retail store,
   (ii) the one or more information monitoring devices are operably connected to (A) a server, (B) one or more databases, or (C) both,
   (iii) the one or more information monitoring devices comprise one or more video image devices, and

       (iv) the step of gathering information using the one or more information monitoring devices comprises
          (A) gathering information of one or more products that the first person retained while shopping at the store,
          (B) tracking the first person to a point-of-sale area of the retail store, and
          (C) utilizing the one or more information monitoring devices to identify one or more being-purchased products that the person is providing for purchase at the retail store in the point-of-sale area;

(b) analyzing by the system, in real time, the information gathered by the information monitoring devices to

    (i) generate and maintain a list of the one or more products retained by the first person while shopping at the retail store, wherein the list comprises a listing of the products retained by the person while shopping at the retail store;

    (ii) generate a listing of the one or more being-purchased products;

    (iii) comparing the listing of the products retained by the person while shopping at the retail store with the listing of the one or more being-purchased products;

(c) in response to at least some of the comparisons generated by the system, utilizing the real time analysis to select a sales associate from a group of sales associates at the retail store; and

(d) sending a communication to the sales associate that comprises at least a portion of (i) the information gathered by the information monitoring devices, (ii) the real time analysis, or (iii) both; wherein the sales representative can then directly interact with the first person in response to the communication.

## 7-ELEVEN

102.    7-Eleven is a leading convenience store retailer operating or licensing more than 13,000 stores in the United States and Canada.

103.    7-Eleven states that its Chief Information Officer "is redefining how technologies such as artificial intelligence, Internet of Things, and more will improve the customer experience." https://sites.7-eleven.com/images/John_Phee_1638386365_5177.pdf.

104.    For purposes of this action, the Accused Products include the 7-Eleven retail environment implementing, without limitation, at least (a) 7-Eleven's network of in-store cameras and associated analytics servers and computing devices used for in-store analytics; (b) 7-Eleven's

mobile app for presenting information including offers and promotions to consumers; providing store locations to consumers; allowing consumers to purchase items for delivery; providing fuel location and price information for 7-Eleven fuel locations to consumers; providing store locations to consumers; providing reward and "Gold Pass" information and offers to consumers; and providing "Scan, Pay, Go" checkout functionality to consumers; (c) a "digital video system" providing "360 cameras and analytics provided a new level of store and shopper intelligence;" (d) digital signage solutions from vendors, including digital signage solutions; (e) stores, concept stores, and trial stores implementing "cashierless" and other reduced-staff stores, including but not limited to a "cashierless" store implemented at the company headquarters in Irving, Texas; (f) AI vision technologies, including Sony AITRIOS technologies, implemented in 7-Eleven stores; (g) inventory management and replenishment software, systems, and technologies; (h) 7-Eleven virtual store technologies that enable automated shopping cart tracking, video playback of customer sessions, and machine learning-based inventory analysis; and (i) point-of-sale (POS) systems and inventory management tools  (collectively, the "Accused Products").

105.    The Accused Products practice the patented systems and methods of the Asserted Patents.

106.    7-Eleven has been aware of Alpha Modus and the Asserted Patents at least as early as the filing of this Complaint.

107.    The financial gains accrued by 7-Eleven through the use of Alpha Modus's patented technology have been substantial, providing 7-Eleven with competitive advantages in the retail market.

108.    The benefits reaped by 7-Eleven through the exploitation of Alpha Modus's intellectual property have resulted in corresponding harm to Alpha Modus. This harm includes but

is not limited to lost business opportunities, revenue, and diminution of the value of its patented technology.

109. This case is filed to address and seek redress for the unauthorized use of Alpha Modus's patented technology by 7-Eleven, which has led to significant commercial gains for 7-Eleven at the expense of Alpha Modus's proprietary rights and investments.

## COUNT I

## (DIRECT INFRINGEMENT OF THE '571 PATENT)

110. Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

111. 7-Eleven has made, used, offered for sale, and sold in the United States, products and systems that directly infringe the '571 Patent, including the Accused Products.

112. The Accused Products utilize one or more information monitoring devices to gather information about persons at a location, as claimed in the '571 Patent.

113. The Accused Products include systems operably connected to a server and/or one or more databases, which analyze the information gathered by the information monitoring devices.

114. The Accused Products collect demographic characteristics, sentiment characteristics, and tracking characteristics of persons in proximity to the information monitoring devices in locations associated with Defendant's customers, such as CTV's associated with consumers.

115. The Accused Products provide an opt-out option to the persons in proximity to the devices and analyze the information of those who have not opted out.

116.    7-Eleven has directly infringed the '571 Patent in violation of 35 U.S.C. § 271(a) by making, using, offering for sale, selling, and/or operating the Accused Products that embody the patented inventions of at least Claim 1 of the '571 Patent.

117.    The Accused Products satisfy each and every element of the asserted claims of the '571 Patent either literally or under the doctrine of equivalents.

118.    7-Eleven infringing activities are and have been without authority or license under the '571 Patent.

119.    As a direct and proximate result of 7-Eleven infringement of the '571 Patent, Alpha Modus has suffered and will continue to suffer damage.

120.    Alpha Modus is informed and believes, and on that basis alleges, that 7-Eleven has been aware of the '571 Patent and its infringement thereof.  Despite this knowledge, 7-Eleven has continued to make, use, sell, and offer for sale the Accused Products.

121.    Alpha Modus is informed and believes that 7-Eleven knew or was willfully blind to the patented technology of the '571 Patent. Despite this knowledge or willful blindness, 7-Eleven has acted with blatant disregard for Alpha Modus's patent rights with an objectively high likelihood of infringement.

122.    Alpha Modus is informed and believes that 7-Eleven has made no efforts to avoid infringement of the '571 Patent, despite its knowledge and understanding that its products and systems infringe the '571 Patent.

123.    Therefore, 7-Eleven infringement of the '571 Patent is willful and egregious, warranting an enhancement of damages.

124.    As such, 7-Eleven has acted and continues to act recklessly, willfully, wantonly, deliberately, and egregiously in infringement of the '571 Patent, justifying an award to Alpha

Modus of increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

## COUNT II

### (INDUCED PATENT INFRINGEMENT OF THE '571 PATENT)

125.    Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

126.    7-Eleven is liable for indirect infringement under 35 U.S.C. § 271(b) of at least one claim of the '571 Patent, at least as early as the filing of this Complaint, because it knowingly induces, aids, and directs others to use the Accused Products in a manner that infringes the '571 Patent.

127.    7-Eleven has implemented and utilized the Accused Products in its stores, which practice the patented methods of the '571 Patent.

128.    7-Eleven's use of the Accused Products demonstrates specific intent to induce infringement of the '571 Patent. 7-Eleven encourages, directs, aids, and abets the use and operation of the Accused Products in a manner that infringes the '571 Patent.

129.    7-Eleven's knowledge of the '571 Patent, combined with its ongoing use of the Accused Products, demonstrates 7-Eleven's knowledge and intent that the Accused Products be used in a manner that infringes the '571 Patent..

130.    7-Eleven's actions and the manner in which the Accused Products are used in 7-Eleven's stores, consistent with 7-Eleven's instructions, demonstrate 7-Eleven's specific intent to induce infringement of the '571 Patent.

131.    Alpha Modus is informed and believes, and on that basis alleges, that 7-Eleven knew or was willfully blind to the fact that it was inducing others, including its customers and

staff, to infringe by practicing, either themselves or in conjunction with 7-Eleven, one or more claims of the '571 Patent.

132.    As a direct and proximate result of 7-Eleven's induced infringement of the '571 Patent, Alpha Modus has suffered and will continue to suffer damage.

133.    Alpha Modus is entitled to recover from 7-Eleven compensation in the form of monetary damages suffered as a result of 7-Eleven's infringement in an amount that cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court.

**COUNT III**

**(DIRECT INFRINGEMENT OF THE '890 PATENT)**

134.    Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

135.    7-Eleven has made, used, offered for sale, and sold in the United States, products and systems that directly infringe the '890 Patent, including the Accused Products.

136.    The Accused Products embody a method for customer assistance in a retail store as claimed in the '890 Patent.

137.    The Accused Products include the use of one or more information monitoring devices to gather information about a person at a retail store, in line with claim 1 of the '890 Patent.

138.    The Accused Products are operably connected to (A) a server, (B) one or more databases, or (C) both, and perform functions such as gathering object identification information of a product and gathering sentiment information of the person with respect to the product.

139.    The Accused Products analyze the information in real time and provide a response based upon the analyzed information gathered by the information monitoring devices, including

but not limited to directing a person to a product location, engaging the person based on the product, providing marketing or advertising information, and offering coupons.

140.    7-Eleven has directly infringed the '890 Patent in violation of 35 U.S.C. § 271(a) by making, using, offering for sale, selling, and/or operating the Accused Products that embody the patented inventions of at least Claim 1 of the '890 Patent.

141.    The Accused Products satisfy each and every element of the asserted claim of the '890 Patent either literally or under the doctrine of equivalents.

142.    7-Eleven's infringing activities are and have been without authority or license under the '890 Patent.

143.    As a direct and proximate result of 7-Eleven's infringement of the '890 Patent, Alpha Modus has suffered and will continue to suffer damage.

144.    Alpha Modus is informed and believes, and on that basis alleges, that 7-Eleven has been aware of the '890 Patent and its infringement thereof.  Despite this knowledge, 7-Eleven has continued to make, use, sell, and offer for sale the Accused Products.

145.    Alpha Modus is informed and believes that 7-Eleven knew or was willfully blind to the patented technology of the '890 Patent. Despite this knowledge or willful blindness, 7-Eleven has acted with blatant disregard for Alpha Modus's patent rights with an objectively high likelihood of infringement.

146.    Alpha Modus is informed and believes that 7-Eleven has made no efforts to avoid infringement of the '890 Patent, despite its knowledge and understanding that its products and systems infringe the '890 Patent.

147.    Therefore, 7-Eleven's infringement of the '890 Patent is willful and egregious, warranting an enhancement of damages.

148.    As such, 7-Eleven has acted and continues to act recklessly, willfully, wantonly, deliberately, and egregiously in infringement of the '890 Patent, justifying an award to Alpha Modus of increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

## COUNT IV

## (INDUCED PATENT INFRINGEMENT OF THE '890 PATENT)

149.    Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

150.    7-Eleven is liable for indirect infringement under 35 U.S.C. § 271(b) of at least one claim of the '890 Patent, at least as early as the filing of this Complaint, because it knowingly induces, aids, and directs others to use the Accused Products in a manner that infringes the '890 Patent.

151.    7-Eleven has implemented and utilized the Accused Products in its stores, which practice the patented methods of the '890 Patent.

152.    7-Eleven's use of the Accused Products demonstrates specific intent to induce infringement of the '890 Patent. 7-Eleven encourages, directs, aids, and abets the use and operation of the Accused Products in a manner that infringes the '890 Patent.

153.    7-Eleven's knowledge of the '890 Patent, combined with its ongoing use of the Accused Products, demonstrates 7-Eleven's knowledge and intent that the Accused Products be used in a manner that infringes the '890 Patent..

154.    7-Eleven's actions and the manner in which the Accused Products are used in 7-Eleven's stores, consistent with 7-Eleven's instructions, demonstrate 7-Eleven's specific intent to induce infringement of the '890 Patent.

155.    Alpha Modus is informed and believes, and on that basis alleges, that 7-Eleven knew or was willfully blind to the fact that it was inducing others, including its customers and staff, to infringe by practicing, either themselves or in conjunction with 7-Eleven, one or more claims of the '890 Patent.

156.    As a direct and proximate result of 7-Eleven's induced infringement of the '890 Patent, Alpha Modus has suffered and will continue to suffer damage.

157.    Alpha Modus is entitled to recover from 7-Eleven compensation in the form of monetary damages suffered as a result of 7-Eleven's infringement in an amount that cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court.

## COUNT V

## (DIRECT INFRINGEMENT OF THE '120 PATENT)

158.    Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

159.    7-Eleven has made, used, offered for sale, and sold in the United States, products and systems that directly infringe the '120 Patent, including the Accused Products.

160.    The Accused Products embody a method for gathering information about shopping activities of a plurality of consumer utilizing the Accused Products at a retail store in a retail store setting, as claimed in the '120 Patent.

161.    The Accused Products utilize a server comprising one or more server processors, and a server memory storing computer-executable instructions that, when executed, perform functions covered by at least Claim 1 of the '120 Patent.

162.    The functions implemented by the Accused Products include gathering traffic information of the shoppers within the retail store, including movement of the shopper; gathering

product interaction information of the products that the shopper interacts with in the store; and identifying the products that the shopper interacts with.

163.    The Accused Products generate layout information about the retail store and use the information gathered by the system in order to make recommendations to improve the layout of products in the store.

164.    Seven-Eleven has directly infringed the '120 Patent in violation of 35 U.S.C. § 271(a) by making, using, offering for sale, selling, and/or operating the Accused Products that embody the patented inventions of at least Claim 1 of the '120 Patent.

165.    The Accused Products satisfy each and every element of the asserted claim of the '120 Patent either literally or under the doctrine of equivalents.

166.    Seven-Eleven's infringing activities are and have been without authority or license under the '120 Patent.

167.    As a direct and proximate result of Seven-Eleven's infringement of the '120 Patent, Alpha Modus has suffered and will continue to suffer damage.

168.    Alpha Modus is informed and believes, and on that basis alleges, that Seven-Eleven has been aware of the '120 Patent and its infringement thereof.  Despite this knowledge, Seven-Eleven has continued to make, use, sell, and offer for sale the Accused Products.

169.    Alpha Modus is informed and believes that Seven-Eleven knew or was willfully blind to the patented technology of the '120 Patent. Despite this knowledge or willful blindness, Seven-Eleven has acted with blatant disregard for Alpha Modus's patent rights with an objectively high likelihood of infringement.

170.    Alpha Modus is informed and believes that Seven-Eleven has made no efforts to avoid infringement of the '120 Patent, despite its knowledge and understanding that its products and systems infringe the '120 Patent.

171.    Therefore, Seven-Eleven's infringement of the '120 Patent is willful and egregious, warranting an enhancement of damages.

172.    As such, Seven-Eleven has acted and continues to act recklessly, willfully, wantonly, deliberately, and egregiously in infringement of the '120 Patent, justifying an award to Alpha Modus of increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

## COUNT VI

## (INDUCED PATENT INFRINGEMENT OF THE '120 PATENT)

173.    Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

174.    Seven-Eleven is liable for indirect infringement under 35 U.S.C. § 271(b) of at least one claim of the '120 Patent, at least as early as the filing of this Complaint, because it knowingly induces, aids, and directs others to use the Accused Products in a manner that infringes the '120 Patent.

175.    Seven-Eleven has implemented and utilized the Accused Products in its stores, which practice the patented methods of the '120 Patent.

176.    Seven-Eleven's use of the Accused Products demonstrates specific intent to induce infringement of the '120 Patent. Seven-Eleven encourages, directs, aids, and abets the use and operation of the Accused Products in a manner that infringes the '120 Patent.

177.    Seven-Eleven's knowledge of the '120 Patent, combined with its ongoing use of the Accused Products, demonstrates Seven-Eleven's knowledge and intent that the Accused Products be used in a manner that infringes the '120 Patent.

178.    Seven-Eleven's actions and the manner in which the Accused Products are used in Seven-Eleven's stores, consistent with Seven Eleven's instructions, demonstrate Seven-Eleven's specific intent to induce infringement of the '120 Patent.

179.    Alpha Modus is informed and believes, and on that basis alleges, that Seven-Eleven knew or was willfully blind to the fact that it was inducing others, including its customers and staff, to infringe by practicing, either themselves or in conjunction with Seven-Eleven, one or more claims of the '120 Patent.

180.    As a direct and proximate result of Seven-Eleven's induced infringement of the '120 Patent, Alpha Modus has suffered and will continue to suffer damage.

181.    Alpha Modus is entitled to recover from Seven-Eleven compensation in the form of monetary damages suffered as a result of Seven-Eleven's infringement in an amount that cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court.

## COUNT VII

## (DIRECT INFRINGEMENT OF THE '880 PATENT)

182.    Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

183.    7-Eleven has made, used, offered for sale, and sold in the United States, products and systems that directly infringe the '880 Patent, including the Accused Products.

184.    The Accused Products embody a method for customer assistance in a retail store as claimed in the '880 Patent.

185.    The Accused Products include the use of one or more information monitoring devices to gather information about the shopping activities of persons at a retail store, in line with claim 1 of the '880 Patent.

186.    7-Eleven's retail stores include a plurality of products stocked within the stores.

187.    The Accused Products are operably connected to (A) a server, (B) one or more databases, or (C) both, and include video image devices.

188.    The Accused Products perform functions such as gathering product interaction information of the person with respect to the products that the person interacts with and gathering object identification information for the products that the persons interacted with during the product interactions.

189.    The Accused Products analyze the information in real time and provide a response based upon the analyzed information gathered by the information monitoring devices, including but not limited to sending a communication to a retail person regarding the inventory of the products interacted with.

190.    7-Eleven has directly infringed the '880 Patent in violation of 35 U.S.C. § 271(a) by making, using, offering for sale, selling, and/or operating the Accused Products that embody the patented inventions of at least Claim 1 of the '880 Patent.

191.    The Accused Products satisfy each and every element of the asserted claim of the '880 Patent either literally or under the doctrine of equivalents.

192.    7-Eleven's infringing activities are and have been without authority or license under the '880 Patent.

193.    As a direct and proximate result of 7-Eleven's infringement of the '880 Patent, Alpha Modus has suffered and will continue to suffer damage.

194.    Alpha Modus is informed and believes, and on that basis alleges, that 7-Eleven has been aware of the '880 Patent and its infringement thereof.  Despite this knowledge, 7-Eleven has continued to make, use, sell, and offer for sale the Accused Products.

195.    Alpha Modus is informed and believes that 7-Eleven knew or was willfully blind to the patented technology of the '880 Patent. Despite this knowledge or willful blindness, 7-Eleven has acted with blatant disregard for Alpha Modus's patent rights with an objectively high likelihood of infringement.

196.    Alpha Modus is informed and believes that 7-Eleven has made no efforts to avoid infringement of the '880 Patent, despite its knowledge and understanding that its products and systems infringe the '880 Patent.

197.    Therefore, 7-Eleven's infringement of the '880 Patent is willful and egregious, warranting an enhancement of damages.

198.    As such, 7-Eleven has acted and continues to act recklessly, willfully, wantonly, deliberately, and egregiously in infringement of the '880 Patent, justifying an award to Alpha Modus of increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

## COUNT VIII

## (INDUCED PATENT INFRINGEMENT OF THE '880 PATENT)

199.    Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

200.    7-Eleven is liable for indirect infringement under 35 U.S.C. § 271(b) of at least one claim of the '880 Patent, at least as early as the filing of this Complaint, because it knowingly

induces, aids, and directs others to use the Accused Products in a manner that infringes the '880 Patent.

201.    7-Eleven has implemented and utilized the Accused Products in its stores, which practice the patented methods of the '880 Patent.

202.    7-Eleven's use of the Accused Products demonstrates specific intent to induce infringement of the '880 Patent. 7-Eleven encourages, directs, aids, and abets the use and operation of the Accused Products in a manner that infringes the '880 Patent.

203.    7-Eleven's knowledge of the '880 Patent, combined with its ongoing use of the Accused Products, demonstrates 7-Eleven's knowledge and intent that the Accused Products be used in a manner that infringes the '880 Patent..

204.    7-Eleven actions and the manner in which the Accused Products are used in 7-Eleven's stores, consistent with 7-Eleven's instructions, demonstrate 7-Eleven's specific intent to induce infringement of the '880 Patent.

205.    Alpha Modus is informed and believes, and on that basis alleges, that 7-Eleven knew or was willfully blind to the fact that it was inducing others, including its customers and staff, to infringe by practicing, either themselves or in conjunction with 7-Eleven, one or more claims of the '880 Patent.

206.    As a direct and proximate result of 7-Eleven's induced infringement of the '880 Patent, Alpha Modus has suffered and will continue to suffer damage.

207.    Alpha Modus is entitled to recover from 7-Eleven compensation in the form of monetary damages suffered as a result of 7-Eleven's infringement in an amount that cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court.

## COUNT IX

## (DIRECT INFRINGEMENT OF THE '731 PATENT)

208.    Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

209.    7-Eleven has made, used, offered for sale, and sold in the United States, products and systems that directly infringe the '731 Patent, including the Accused Products.

210.    The Accused Products utilize one or more information monitoring devices associated with consumers, for tracking the location of consumers using information monitoring devices, and for providing product communications and store location information based on such analyses, as claimed in the '731 Patent.

211.    The Accused Products utilize servers comprising one or more processors, and server-based databases and applications storing computer-executable instructions that, when executed, perform functions covered by at least Claim 1 of the '731 Patent.

212.    The functions implemented by the Accused Products include analyzing gathered product interaction information from consumer shopping activities, tracking the consumer's location relative to retail stores, and generating real-time communications including promotions, coupons, advertising, and purchase options.

213.    The Accused Products allow 7-Eleven as well as 7-Eleven's customers to provide targeted communications to consumers, including coupons, marketing messages, and purchase options such as pickup, delivery, and reduced-price offers during limited promotional periods, all in accordance with the claimed inventions of the '731 Patent.

214.    7-Eleven has directly infringed the '731 Patent in violation of 35 U.S.C. § 271(a) by making, using, offering for sale, selling, and/or operating the Accused Products that embody the patented inventions of at least Claim 1 of the '731 Patent.

215.    The Accused Products satisfy each and every element of the asserted claim of the '731 Patent either literally or under the doctrine of equivalents.

216.    7-Eleven's infringing activities are and have been without authority or license under the '731 Patent.

217.    As a direct and proximate result of 7-Eleven's infringement of the '731 Patent, Alpha Modus has suffered and will continue to suffer damage.

218.    Alpha Modus is informed and believes, and on that basis alleges, that 7-Eleven has been aware of the '731 Patent and its infringement thereof. Despite this knowledge, 7-Eleven has continued to make, use, sell, and offer for sale the Accused Products.

219.    Alpha Modus is informed and believes that 7-Eleven knew or was willfully blind to the patented technology of the '731 Patent. Despite this knowledge or willful blindness, 7-Eleven has acted with blatant disregard for Alpha Modus's patent rights with an objectively high likelihood of infringement.

220.    Alpha Modus is informed and believes that 7-Eleven has made no efforts to avoid infringement of the '731 Patent, despite its knowledge and understanding that its products and systems infringe the '731 Patent.

221.    Therefore, 7-Eleven's infringement of the '731 Patent is willful and egregious, warranting an enhancement of damages.

222.    As such, 7-Eleven's has acted and continues to act recklessly, willfully, wantonly, deliberately, and egregiously in infringement of the '731 Patent, justifying an award to Alpha

Modus of increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

## COUNT X

## (INDUCED PATENT INFRINGEMENT OF THE '731 PATENT)

223.    Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

224.    7-Eleven is liable for indirect infringement under 35 U.S.C. § 271(b) of at least one claim of the '731 Patent, at least as early as the filing of this Complaint, because it knowingly induces, aids, and directs others to use the Accused Products in a manner that infringes the '731 Patent.

225.    7-Eleven has implemented and utilized the Accused Products in its stores, which practice the patented methods of the '731 Patent.

226.    7-Eleven's use of the Accused Products demonstrates specific intent to induce infringement of the '731 Patent. 7-Eleven encourages, directs, aids, and abets the use and operation of the Accused Products in a manner that infringes the '731 Patent.

227.    7-Eleven's knowledge of the '731 Patent, combined with its ongoing use of the Accused Products, demonstrates 7-Eleven's knowledge and intent that the Accused Products be used in a manner that infringes the '731 Patent..

228.    7-Eleven's actions and the manner in which the Accused Products are used in 7-Eleven's stores, consistent with 7-Eleven's instructions, demonstrate 7-Eleven's specific intent to induce infringement of the '731 Patent.

229.    Alpha Modus is informed and believes, and on that basis alleges, that 7-Eleven knew or was willfully blind to the fact that it was inducing others, including its customers and

staff, to infringe by practicing, either themselves or in conjunction with 7-Eleven, one or more claims of the '731 Patent.

230.    As a direct and proximate result of 7-Eleven's induced infringement of the '731 Patent, Alpha Modus has suffered and will continue to suffer damage.

231.    Alpha Modus is entitled to recover from 7-Eleven compensation in the form of monetary damages suffered as a result of 7-Eleven's infringement in an amount that cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court.

## COUNT XI

## (DIRECT INFRINGEMENT OF THE '550 PATENT)

232.    Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

233.    7-Eleven has made, used, offered for sale, and sold in the United States, products and systems that directly infringe the '550 Patent, including the Accused Products.

234.    The Accused Products embody a system for monitoring and analyzing consumer behavior and product interaction information in a retail store setting, as claimed in the '550 Patent.

235.    The Accused Products utilize a server comprising one or more server processors, and a server memory storing computer-executable instructions that, when executed, perform functions covered by at least Claim 1 of the '550 Patent.

236.    The functions include gathering and analyzing information from information monitoring devices, including video image devices, to track consumer interactions with retail products, identifying products of interest, associating such information with consumer data, and generating marketing or promotional content based on the collected information in real-time.

237.    7-Eleven has directly infringed the '550 Patent in violation of 35 U.S.C. § 271(a) by making, using, offering for sale, selling, and/or operating the Accused Products that embody the patented inventions of at least Claim 1 of the '550 Patent.

238.    The Accused Products satisfy each and every element of the asserted claim of the '550 Patent either literally or under the doctrine of equivalents.

239.    7-Eleven's infringing activities are and have been without authority or license under the '550 Patent.

240.    As a direct and proximate result of 7-Eleven's infringement of the '550 Patent, Alpha Modus has suffered and will continue to suffer damage.

241.    Alpha Modus is informed and believes, and on that basis alleges, that 7-Eleven has been aware of the '550 Patent and its infringement thereof. Despite this knowledge, 7-Eleven has continued to make, use, sell, and offer for sale the Accused Products.

242.    Alpha Modus is informed and believes that 7-Eleven knew or was willfully blind to the patented technology of the '550 Patent. Despite this knowledge or willful blindness, 7-Eleven has acted with blatant disregard for Alpha Modus's patent rights with an objectively high likelihood of infringement.

243.    Alpha Modus is informed and believes that 7-Eleven has made no efforts to avoid infringement of the '550 Patent, despite its knowledge and understanding that its products and systems infringe the '550 Patent.

244.    Therefore, 7-Eleven's infringement of the '550 Patent is willful and egregious, warranting an enhancement of damages.

245.    As such, 7-Eleven has acted and continues to act recklessly, willfully, wantonly, deliberately, and egregiously in its infringement of the '550 Patent, justifying an award to Alpha

Modus of increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

## COUNT XII

## (INDUCED PATENT INFRINGEMENT OF THE '550 PATENT)

246.     Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

247.     7-Eleven is liable for indirect infringement under 35 U.S.C. § 271(b) of at least one claim of the '550 Patent, at least as early as the filing of this Complaint, because it knowingly induces, aids, and directs others to use the Accused Products in a manner that infringes the '550 Patent.

248.     7-Eleven's use of the Accused Products demonstrates specific intent to induce infringement of the '550 Patent. 7-Eleven encourages, directs, aids, and abets the use and operation of the Accused Products in a manner that infringes the '550 Patent.

249.     7-Eleven's knowledge of the '550 Patent, combined with its ongoing making of, use of, sale of, and offers to sell of the Accused Products, demonstrates 7-Eleven's knowledge and intent that the Accused Products be used in a manner that infringes the '550 Patent.

250.     7-Eleven's actions and the manner in which the Accused Products are used in 7-Eleven's stores, consistent with 7-Eleven's instructions, demonstrate 7-Eleven's specific intent to induce infringement of the '550 Patent.

251.     Alpha Modus is informed and believes, and on that basis alleges, that 7-Eleven knew or was willfully blind to the fact that it was inducing others, including its customers and staff, to infringe by practicing, either themselves or in conjunction with 7-Eleven, one or more claims of the '550 Patent.

252.    As a direct and proximate result of 7-Eleven's induced infringement of the '550 Patent, Alpha Modus has suffered and will continue to suffer damage.

253.    Alpha Modus is entitled to recover from 7-Eleven compensation in the form of monetary damages suffered as a result of 7-Eleven's infringement in an amount that cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court.

## COUNT XIII

## (DIRECT INFRINGEMENT OF THE '121 PATENT)

254.    Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

255.    7-Eleven has made, used, offered for sale, and sold in the United States, products and systems that directly infringe the '121 Patent, including the Accused Products.

256.    The Accused Products embody a method for gathering information about shopping activities of consumers utilizing the Accused Products at a retail store in a retail store setting, as claimed in the '121 Patent.

257.    The Accused Products utilize a server comprising one or more server processors, and a server memory storing computer-executable instructions that, when executed, perform functions covered by at least Claim 1 of the '121 Patent.

258.    The functions implemented by the Accused Products include gathering traffic information of the shoppers within the retail store, including movement of the shopper; gathering product interaction information of the products that the shopper interacts with in the store; and identifying the products that the shopper interacts with.

259.    The Accused Products generate allow the user to make payments in point-of-sale areas once the consumer has finished shopping, allowing the user to purchase the retained products quickly.

260.    7-Eleven has directly infringed the '121 Patent in violation of 35 U.S.C. § 271(a) by making, using, offering for sale, selling, and/or operating the Accused Products that embody the patented inventions of at least Claim 1 of the '121 Patent.

261.    The Accused Products satisfy each and every element of the asserted claims of the '121 Patent either literally or under the doctrine of equivalents.

262.    7-Eleven's infringing activities are and have been without authority or license under the '121 Patent.

263.    As a direct and proximate result of 7-Eleven's infringement of the '121 Patent, Alpha Modus has suffered and will continue to suffer damage.

264.    Alpha Modus is informed and believes, and on that basis alleges, that 7-Eleven has been aware of the '121 Patent and its infringement thereof. Despite this knowledge, 7-Eleven has continued to make, use, sell, and offer for sale the Accused Products.

265.    Alpha Modus is informed and believes that 7-Eleven knew or was willfully blind to the patented technology of the '121 Patent. Despite this knowledge or willful blindness, 7-Eleven has acted with blatant disregard for Alpha Modus's patent rights with an objectively high likelihood of infringement.

266.    Alpha Modus is informed and believes that 7-Eleven has made no efforts to avoid infringement of the '121 Patent, despite its knowledge and understanding that its products and systems infringe the '121 Patent.

267.    Therefore, 7-Eleven's infringement of the '121 Patent is willful and egregious, warranting an enhancement of damages.

268.    As such, 7-Eleven has acted and continues to act recklessly, willfully, wantonly, deliberately, and egregiously in infringement of the '121 Patent, justifying an award to Alpha Modus of increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

## COUNT XIV

## (INDUCED PATENT INFRINGEMENT OF THE '121 PATENT)

269.    Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

270.    7-Eleven is liable for indirect infringement under 35 U.S.C. § 271(b) of at least one claim of the '718 Patent, at least as early as the filing of this Complaint, because it knowingly induces, aids, and directs others to use the Accused Products in a manner that infringes the '121 Patent.

271.    7-Eleven's use of the Accused Products demonstrates specific intent to induce infringement of the '121 Patent. 7-Eleven encourages, directs, aids, and abets the use and operation of the Accused Products in a manner that infringes the '121 Patent.

272.    7-Eleven's knowledge of the '121 Patent, combined with its ongoing making of, use of, sale of, and offers to sell of the Accused Products, demonstrates 7-Eleven's knowledge and intent that the Accused Products be used in a manner that infringes the '121 Patent.

273.    7-Eleven's actions and the manner in which the Accused Products are used in 7-Eleven's stores, consistent with 7-Eleven's instructions, demonstrate 7-Eleven's specific intent to induce infringement of the '121 Patent.

274.    Alpha Modus is informed and believes, and on that basis alleges, that 7-Eleven knew or was willfully blind to the fact that it was inducing others, including its customers and staff, to infringe by practicing, either themselves or in conjunction with 7-Eleven, one or more claims of the '121 Patent.

275.    As a direct and proximate result of 7-Eleven's induced infringement of the '121 Patent, Alpha Modus has suffered and will continue to suffer damage.

276.    Alpha Modus is entitled to recover from 7-Eleven compensation in the form of monetary damages suffered as a result of 7-Eleven's infringement in an amount that cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court.

## COUNT XV

## (DIRECT INFRINGEMENT OF THE '718 PATENT)

277.    Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

278.    7-Eleven has made, used, offered for sale, and sold in the United States, products and systems that directly infringe the '718 Patent, including the Accused Products.

279.    The Accused Products embody a method for obtaining an information analysis of the shopping activities of consumers, for tracking the location of consumers using information monitoring devices, including video image devices such as cameras, and for gathering information of products retained by the consumer for purchase, as claimed in the '718 Patent.

280.    The Accused Products utilize servers comprising one or more processors, and server-based databases and applications storing computer-executable instructions that, when executed, perform functions covered by at least Claim 1 of the '718 Patent.

281.    The functions implemented by the Accused Products include analyzing gathered product interaction information from consumer shopping activities, generating a list of products retained by the consumer, generating a list of products being purchased by the consumer, and comparing such lists.

282.    The functions implemented by the Accused Products include selecting and sending communications to sales associates based on such comparison or other information gathered or analyzed to allow the sales associate to interact with the consumer, including but not limited to the employee resolving any discrepancy with the consumer.

283.    7-Eleven has directly infringed the '718 Patent in violation of 35 U.S.C. § 271(a) by making, using, offering for sale, selling, and/or operating the Accused Products that embody the patented inventions of at least Claim 1 of the '718 Patent.

284.    The Accused Products satisfy each and every element of the asserted claims of the '718 Patent either literally or under the doctrine of equivalents.

285.    7-Eleven's infringing activities are and have been without authority or license under the '718 Patent.

286.    As a direct and proximate result of 7-Eleven's infringement of the '718 Patent, Alpha Modus has suffered and will continue to suffer damage.

287.    Alpha Modus is informed and believes, and on that basis alleges, that 7-Eleven has been aware of the '718 Patent and its infringement thereof. Despite this knowledge, 7-Eleven has continued to make, use, sell, and offer for sale the Accused Products.

288.    Alpha Modus is informed and believes that 7-Eleven knew or was willfully blind to the patented technology of the '718 Patent. Despite this knowledge or willful blindness, 7-

Eleven has acted with blatant disregard for Alpha Modus's patent rights with an objectively high likelihood of infringement.

289.    Alpha Modus is informed and believes that 7-Eleven has made no efforts to avoid infringement of the '718 Patent, despite its knowledge and understanding that its products and systems infringe the '718 Patent.

290.    Therefore, 7-Eleven's infringement of the '718 Patent is willful and egregious, warranting an enhancement of damages.

291.    As such, 7-Eleven has acted and continues to act recklessly, willfully, wantonly, deliberately, and egregiously in infringement of the '718 Patent, justifying an award to Alpha Modus of increased damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred under 35 U.S.C. § 285.

## COUNT XVI

## (INDUCED PATENT INFRINGEMENT OF THE '718 PATENT)

292.    Alpha Modus repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs.

293.    7-Eleven is liable for indirect infringement under 35 U.S.C. § 271(b) of at least one claim of the '718 Patent, at least as early as the filing of this Complaint, because it knowingly induces, aids, and directs others to use the Accused Products in a manner that infringes the '718 Patent.

294.    7-Eleven's use of the Accused Products demonstrates specific intent to induce infringement of the '718 Patent. 7-Eleven encourages, directs, aids, and abets the use and operation of the Accused Products in a manner that infringes the '718 Patent.

295.    7-Eleven's knowledge of the '718 Patent, combined with its ongoing making of, use of, sale of, and offers to sell of the Accused Products, demonstrates 7-Eleven's knowledge and intent that the Accused Products be used in a manner that infringes the '718 Patent.

296.    7-Eleven's actions and the manner in which the Accused Products are used in 7-Eleven's stores, consistent with 7-Eleven's instructions, demonstrate 7-Eleven's specific intent to induce infringement of the '718 Patent.

297.    Alpha Modus is informed and believes, and on that basis alleges, that 7-Eleven knew or was willfully blind to the fact that it was inducing others, including its customers and staff, to infringe by practicing, either themselves or in conjunction with 7-Eleven, one or more claims of the '718 Patent.

298.    As a direct and proximate result of 7-Eleven's induced infringement of the '718 Patent, Alpha Modus has suffered and will continue to suffer damage.

299.    Alpha Modus is entitled to recover from 7-Eleven compensation in the form of monetary damages suffered as a result of 7-Eleven's infringement in an amount that cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court.

## JURY DEMAND

Alpha Modus hereby demands a trial by jury of all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## PRAYER FOR RELIEF

WHEREFORE, Alpha Modus prays for relief against 7-Eleven as follows:

(A)    An entry of judgment that 7-Eleven has infringed and is directly infringing one or more claims of each of the '571 Patent, the '890 Patent, the '120 Patent, the '880 Patent, the '731 Patent, the '550 Patent, the '121 Patent, and the '718 Patent;

(B)     An entry of judgment that 7-Eleven has infringed and is indirectly infringing one or more claims of each the '571 Patent, the '890 Patent, the '120 Patent, the '880 Patent, the '731 Patent, the '550 Patent, the '121 Patent, and the '718 Patent;

(C)     An entry of judgment that the '571 Patent, the '890 Patent, the '120 Patent, the '880 Patent, the '731 Patent, the '550 Patent, the '121 Patent, and the '718 Patent are valid and enforceable;

(D)     An order pursuant to 35 U.S.C. § 283 permanently enjoining 7-Eleven, its officers, agents, servants, employees, attorneys, and those persons in active concert or participation with it, from further acts of infringement of the '571 Patent, the '890 Patent, the '120 Patent, the '880 Patent, the '731 Patent, the '550 Patent, the '121 Patent, and the '718 Patent;

(E)     An order awarding damages sufficient to compensate Alpha Modus for 7-Eleven's infringement of the '571 Patent, the '890 Patent, the '120 Patent, the '880 Patent, the '731 Patent, the '550 Patent, the '121 Patent, and the '718 Patent; but in no event less than a reasonable royalty, together with interest and costs;

(F)     A determination that 7-Eleven's infringement has been willful, wanton, deliberate, and egregious;

(G)     A determination that the damages against 7-Eleven be trebled or for any other basis within the Court's discretion pursuant to 35 U.S.C. § 284;

(H)     A finding that this case against 7-Eleven is "exceptional" and an award to Alpha Modus of its costs and reasonable attorneys' fees, as provided by 35 U.S.C. § 285;

(I)     An accounting of all infringing sales and revenues of 7-Eleven, together with post judgment interest and prejudgment interest from the first date of infringement of the '571 Patent,

the '890 Patent, the '120 Patent, the '880 Patent, the '731 Patent, the '550 Patent, the '121 Patent, and the '718 Patent; and

(J)    Such further and other relief as the Court may deem proper and just.

Dated: October 22, 2025                        Respectfully submitted,

*/s/ Christopher E. Hanba*
Christopher E. Hanba
Texas Bar No. 24121391
chanba@princelobel.com
Ariana D. Pellegrino *
Michigan Bar No. P79104
apellegrino@princelobel.com
Joshua G. Jones
Texas Bar No. 24065517
jjones@princelobel.com
Bryan D. Atkinson
Texas Bar No. 24036157
batkinson@princelobel.com
        * Not admitted in Texas

PRINCE LOBEL TYE LLP
500 W. 2nd Street, Suite 1900
Austin, Texas 78701
Tel: (617) 456-8000

*Attorneys for Plaintiff Alpha Modus, Corp.*